52  563
145  436

## The City of Mount Vernon et al. v. Hovey.

City.—*Bonds Donated to Railroad.*—*Bona Fide Holder.*—It is settled that section 60 of the general law of March 14th, 1867, for the incorporation of cities in this State (3 Ind. Stat. 93), providing that cities incorporated under said act have power to borrow money to subscribe to the stock of any plank road, macadamized road or railroad running into or through such city, to make donations in money or the bonds of such city to aid in the construction of such roads, on petition of a majority of the resident freeholders thereof, etc., is constitutional; and bonds regularly issued and delivered by the authority of said section, in the hands of a *bona fide*

holder, for a valuable consideration, without notice, must be regarded as public securities and placed on a footing with bills of exchange.

SAME.—*Consolidation of Railroads After Order of Donation and Before Issue of Bonds.—Injunction.*—The common council of a city incorporated under the general law for the incorporation of cities in this State, upon petition of a majority of the resident freeholders of the city, made an order for the donation of a certain amount in the bonds of the city to a railroad company, incorporated under the laws of this State, to aid in the construction of its railroad running into said city. Before the bonds had been actually issued, said company was consolidated with another railroad company, incorporated under the laws of an adjoining state, the consolidated company taking a new name; and afterwards, without further petition or further order of donation, the bonds of said city so ordered were issued and delivered to the consolidated company, being made payable to bearer, and reciting that they were issued by authority of said act of March 14th, 1867, and in pursuance of the proper petition and order of the common council of said city, of a given date, making a subscription in bonds of said city to aid in the construction of the railroad named in said petition and order, "now consolidated with and forming a part of" said consolidated company, giving its name; and afterwards said bonds were sold to a purchaser without notice, and the city for some years regularly paid the interest thereon. Suit by a taxpayer of said city for an injunction, to restrain the collection of a certain amount of tax assessed against him for the payment of the interest on said bonds and to create a sinking fund for the payment of the principal, no irregularity in the petition of the freeholders or in said order of the common council making the donation being shown, and no irregularity in the consolidation of said railroad companies being claimed. *Held,* that an injunction would not lie.

From the Posey Circuit Court.

*M. W. Pearse,* for appellants.

*J. Pitcher, H. C. Pitcher, A. P. Hovey* and *G. V. Menzies,* for appellee.

BIDDLE, J.—The appellee brought suit below against the appellants, to enjoin the collection of certain taxes assessed against him. The complaint contains three paragraphs. The averred facts upon which appellee relies, as presented in the third paragraph of the complaint, may be stated as follows:

That he is a freeholder and tax-payer of the city of Mount Vernon; that he is the owner of real and personal property

within the limits of the city, of the value of twenty-four. thousand six hundred and fifty-five dollars; that the assessment made by the common council of said city against the plaintiff, for the year 1874, amounts to the sum of five hundred and fifty-four dollars and seventy-four cents; that of said sum sixty-four dollars and seventy-eight cents are for the payment of interest on, and to provide a sinking fund for the payment of the principal of, the bonds of said city, issued and delivered to the Chicago and Illinois Southern Railroad Company; that on the 25th day of December, 1868, the common council of said city, in pursuance of a petition by a majority of the freeholders thereof, and of an act of the legislature of Indiana, approved March 14th, 1867, made an order to donate the sum of two hundred thousand dollars in the bonds of said city to the Mount Vernon and Grayville Railroad Company, a corporation then existing under the laws of this State, to aid in building her road, but that no part of said bonds were ever issued or delivered to said Mount Vernon and Grayville Railroad Company; that on the 14th day of April, 1870, the said Mount Vernon and Grayville Railroad Company was consolidated with the Grayville and Mattoon Railroad Company, a corporation then existing by virtue of the laws of the State of Illinois, and that after said consolidation the said roads became and were known as the said Chicago and Illinois Southern Railroad Company; that on the 28th day of March, 1871, the said common council, without any further petition of the freeholders of said city, or any further order of donation, issued and delivered said bonds to the said Chicago and Illinois Southern Railroad Company, which road is now abandoned and worthless; that he has paid all of said taxes so assessed against him, except the said sixty-four dollars and seventy-eight cents, which the said Terry, as treasurer of said city, threatens and is about to proceed to collect against him. Prayer for a perpetual injunction.

The complaint is accompanied with the proper exhibits, and the averments are formally alleged. The bonds are pay-

able to bearer, and on their face recite that they were issued under the authority of the act of March 14th, 1867, "and in pursuance of the proper petition and order of the common council of said city, dated the 25th day of December, 1868, making a subscription in bonds of said city to aid in the construction of the Mount Vernon and Grayville Railroad, now consolidated with, and forming a part of the Chicago and Illinois Southern Railroad."

The appellants answer each paragraph of the complaint separately, and answer the whole complaint by a fourth paragraph, in which they admit the issuing of the bonds, the levy of the tax, and the consolidation of the roads, as alleged in the complaint; but aver that said consolidation was made in accordance with a public statute of the State of Indiana, and that, by the terms of said consolidation, the said railroad was to be built from Mount Vernon, Indiana, to Grayville, Illinois, and thence to Mattoon, in said last mentioned State. That, at the time said bonds were issued, said railroad was so far completed as to admit the running of trains thereon for a distance of more than five miles in a northerly direction from the city of Mount Vernon, and towards said town of Grayville. That the proposal of said city to donate two hundred thousand dollars in its bonds, to aid in constructing said railroad, was duly accepted by said Mount Vernon and Grayville Railroad Company, acted upon by its board of directors, and said sum treated by said company as part of its assets. That said bonds were issued by said city for the purpose prayed for in the petition presented, and for no other purpose. That, after the issuing and delivery of said bonds to said railroad company, the same were sold to one George Opedyke, a resident of the city of New York, without notice to him, either by said plaintiffs or defendants, or by said railroad company, or any other person, of any fraud, defect, or deceit therein. That, ever since the issuing and sale of said bonds, the city has regularly paid the interest thereon up to July, 1874, since which time the same has not been paid for want of funds. Wherefore, etc.

The first, second and third paragraphs of the answer are similar to the fourth as stated above. Separate demurrers were filed to each paragraph and sustained by the court, and the injunction granted. Exceptions and appeal. Thus, the main question is presented by the third paragraph of the complaint and the fourth paragraph of the answer.

The single error assigned is sustaining the appellee's demurrers to the appellants' answer.

The constitutionality of section 60, 3 Ind. Stat. 93, under the authority of which the bonds in controversy were issued, must be held as settled. *Sankey* v. *The Terre Haute & S. W. R. R. Co.*, 42 Ind. 402. And bonds regularly issued and delivered by the authority of said section, in the hands of a *bona fide* holder, for a valuable consideration, without notice, must be regarded as public securities, and placed on a footing with bills of exchange. *City of Aurora* v. *West*, 22 Ind. 88; *Nugent* v. *The Supervisors*, 19 Wallace, 241; *Moran* v. *The Commissioners of Miami County*, 2 Black, 722; *Lee County* v. *Rogers*, 7 Wallace, 181; *Mercer County* v. *Hacket*, 1 Wallace, 83; *Rogers* v. *Burlington*, 3 Wallace, 654; *Clark* v. *The City of Janesville*, 10 Wis. 136; *The State, ex rel. Treadwell*, v. *Commissioners*, 12 Ohio St. 596; *New Albany, etc., Plank Road Co.* v. *Smith*, 23 Ind. 353; *Board of Commissioners* v. *Bright*, 18 Ind. 93.

In this case, no irregularity in the petition of the freeholders, nor in the order of the common council of the city of Mount Vernon, in making the donation, is shown; nor is it claimed that there is any irregularity in the consolidation of the railroads as alleged. But it is contended on behalf of the appellee:

"1. If the donation by delivery of city bonds had been actually made to the road petitioned for, it would have been a vested right, and would have passed under the act of February 23d, 1853 (1 G. & H. 526), to the road formed by the act of consolidation, as one of the vested rights of the Mount Vernon and Grayville Railroad Company. An examination of section 60, 3 Ind. Stat. 93, demonstrates that the legisla-

ture intended, in conferring this power upon cities beyond the usual purposes of their incorporation, to limit its use to but two methods, one by contract on the part of the municipality in subscribing for stock in a railroad, the other by a gift or donation in money or bonds, by which cities might aid in constructing railroads without incurring any responsibility attaching to the position of a stockholder. That this choice was clearly intended by the act, is apparent, when we look back upon the many difficulties and embarrassments that had overtaken cities in this State as stockholders in railroads. It is evident that but one way of contracting is permitted by section 60, *supra*, that is, by taking stock, and that there is no intermediate state or condition between it and a donation in which a contract could be made.

"2. In the case at bar, the common council was authorized to donate under the restrictions named in the petition. Acting under that authority, it had only gone to the extent of making a bare proposition or tender binding upon nobody. This is sought to be avoided, in the fourth paragraph of the answer, by saying the Mount Vernon and Grayville Railroad Company accepted such proposal, and always treated it as assets on its books, endeavoring thereby to treat the donation as consummated. We submit that the transaction up to this stage was purely and simply a matter between the citizens and the council, the railroad company having no voice or interest in it; that the Mount Vernon and Grayville Railroad Company had no right, as against the city, which it could have enforced by *mandamus*, we have only to refer the court to the cases of *Board of Commissioners, of Crawford County* v. *L., N. A. & St. L. Air Line R. W. Co.*, 39 Ind. 192; and *Sankey* v. *The T. H. & S. W. R. W. Co.*, 42 Ind. 402. In the latter case the court say the railroad company has no vested right until the donation is actually made. That the donation could not have been made in this case, we have only to remember it was to be made in city bonds, choses in action, which could not pass except by delivery, and that delivery was made to another and differ-

ent corporation than the one named in the petition and order, and after the demise of the company prayed for in the petition.

" 3. It is seriously urged that the consolidation wrought no change in the original purpose for which the donation was made. We see a vast difference between the scheme before and after the consolidation. The people of Mount Vernon might be willing enough to aid by their revenues a road to be built entirely within their own county, but decline to embark in an enterprise several hundred miles in length, with the management transferred to a distant state, under different laws from their own, and their control of it gone. They were at least entitled to a voice in the matter, to say whether they would or would not consent to the new order of things, something that has never yet been afforded them.

" 4. The question arises, could the Chicago and Illinois Southern Railroad Company, upon a demand and refusal by the common council to issue the bonds, have compelled by *mandamus* their issue? If it could not, then the council had no right to do what it could not have been compelled to do under the writ. The act of the council in making the issue was to disregard wholly the wishes of the taxpayers, and to bind them by a contract into which they never intended to enter.

" In *Harshman* v. *Bates Co.*, 3 Dillon C. C. 150, the history of the issue of the bonds is contained in the recitals on their face, which name the statute, the vote of the people, and the consolidation of the roads, as in the bonds in the case at bar, the two cases being identically alike, with the exception of one being a subscription, the other a donation. In the former case, the complaint set up almost the same facts pleaded in the appellants' answer, an innocent holder for value having purchased, without notice, etc. DILLON, J., held, upon the authority of *Marsh* v. *Fulton Co.*, 10 Wal. 676, *Clearwater* v. *Meredith*, 1 Wal. 25, *McMahan* v. *Morrison*, 16 Ind. 172, that the county, having authority by the proper vote to take stock

in one railroad company, had no right without another vote to subscribe for stock in a consolidated company formed by the railroad voted for and another corporation, when the subscription had not been made to the original company, and that the consolidated company could not have enforced the subscription and issue of the bonds; and that notice of these facts appearing upon the face of the bonds, there could be no such thing as an innocent holder, but the purchaser took them with actual notice of the illegality, and stood in the same relation to them as the payee, the railroad company, to which they were issued. That case also supports the position we assume, that the constitutional provision requiring a vote, being the same as our statutes requiring a petition, is a condition precedent that cannot be dispensed with by the county agents, and that to neglect it when stock is taken in the consolidated road would be rendering this safeguard a nullity."

Whatever might be the difference, if any, between bonds issued as a donation, and bonds issued in payment of stock, before they are delivered, or while they remain in the hands of the donee, after they have passed into the hands of an innocent holder, for a valuable consideration, without notice, both classes of bonds would be equally binding. There was authority in law to issue the bonds—the purchaser had a right to presume that they were issued regularly. There was authority in law for the consolidation of the railroads— the purchaser had a right to presume that the consolidation had been regularly effected. Railroads escape none of their liabilities by consolidation, and, reciprocally, lose none of their rights. There is no act recited on the face of the bonds which had not the authority of law for its accomplishment; nothing to show that it was irregularly performed; no defect—nothing to awaken suspicion of their illegality. Such bonds in the hands of a *bona fide* holder must be held valid, whatever defects might have existed remediable between the donor and donee. *Nugent* v. *The Supervisors,* 19 Wallace, 241.

It is urged, that "the people of Mount Vernon might be willing enough to aid by their revenues a road to be built entirely within their own county, but decline to embark in an enterprise several hundred miles in length, with the management transferred to a distant state, under different laws from their own, and their control of it gone."

All of this may be very true; but the freeholders who petitioned the common council that passed the order, and the tax-payers of Mount Vernon, from whom the money was to be drawn, must be held to have known that the railroad to which they granted aid could legally effect the consolidation of which the appellee now complains. They must have known that the railroad lost none of its legal powers, and forfeited none of its rights, by accepting the donation. *Bish* v. *Johnson*, 21 Ind. 299; *Hanna* v. *The Cincinnati and Fort Wayne R. R. Co.*, 20 Ind. 30; *McMahan* v. *Morrison*, 16 Ind. 172; *Sparrow* v. *The Evansville and Crawfordsville R. R. Co.*, 7 Ind. 369.

The question whether the Chicago and Illinois Southern Railroad Company could have compelled the issue of the bonds by *mandamus* is not before us, and therefore not decided. After the delivery of the bonds, such a question is wholly immaterial.

It is conceded, on behalf of the appellee, that if the donation of the bonds had been actually made to the road petitioned for, it would have been a vested right, and would have passed to the road formed by the act of consolidation. If so, the bonds were not void, but at most only voidable. Admitting that they were voidable as between the donor and donee, having been delivered and passed into the hands of a *bona fide* holder, and recognized as binding by repeated payments of their interest coupons, it is now too late to question their validity. *Society for Savings* v. *The City of New London*, 29 Conn. 174; *The President, etc., of the Town of Keithsburg* v. *Frick*, 34 Ill. 405; *Board of Supervisors of Mercer Co.* v. *Hubbard*, 45 Ill. 139.

We are of opinion that the court erred in sustaining the demurrers to the several paragraphs of the answer.

The judgment is reversed; the cause remanded, with directions to overrule the demurrers to the first, second, third and fourth paragraphs of answer, and for further proceedings according to this opinion.

### ON PETITION FOR A REHEARING.

BIDDLE, J.—The appellee presents his petition with marked ability and earnestness, and mainly relies for its support on the case of *Harshman* v. *Bates County*, recently decided by the Supreme Court of the United States. See 3 Dillon C. C. 150, and St. Louis Central Law Journal, June 9th, 1876, p. 367. The case may be briefly stated as follows:

The voters of Mount Pleasant township, Bates county, Missouri, in May, 1870, authorized the county court to subscribe ninety thousand dollars to the capital stock of "The Lexington, Chillicothe and Gulf Railroad Company."

In July, 1870, another corporation was formed, known as "The Pleasant Hill Division of the Lexington, Chillicothe and Gulf Railroad Company."

In October, 1870, the two companies were consolidated, and became a corporation by the name of "The Lexington, Lake and Gulf Railroad."

In January, 1871, the county court, upon the supposed authority of the vote to "The Lexington, Chillicothe and Gulf Railroad Company," subscribed the ninety thousand dollars directly to "The Lexington, Lake and Gulf Railroad."

It will be plainly perceived that the two cases differ in their premises, in this: In the case cited, the citizens of Mount Pleasant township voted to authorize the county court of Bates county to subscribe stock to "The Lexington, Chillicothe and Gulf Railroad Company." This authority was never exercised, but after the consolidation of the road to

which the stock was voted with "The Pleasant Hill Division of the Lexington, Chillicothe and Gulf Railroad Company," the two roads constituting "The Lexington, Lake and Gulf Railroad," the county court subscribed the stock, on the supposed authority of the original vote, directly to "The Lexington, Lake and Gulf Railroad," the new corporation. Here, there being no subscription to "The Lexington, Chillicothe and Gulf Railroad Company," hence that corporation could carry no obligation against the subscribers into the new consolidated company. In the case we are deciding, the citizens of Mount Vernon petitioned the common council to subscribe in their bonds to aid "The Mount Vernon and Grayville Railroad Company," and the order subscribing the bonds was accordingly made, before the road was consolidated with "The Grayville and Mattoon Railroad Company," the two roads thus becoming "The Chicago and Illinois Southern Railroad Company." "The Mount Vernon and Grayville Railroad" corporation therefore carried the obligation into the new consolidated company. True, the bonds were not issued until after the consolidation, but this is immaterial. They may be issued at any time the obligation requires, as the instalments may become due. A portion of them in this case, indeed, still remain to be issued. The obligation to issue the bonds to the new corporation, after the consolidation, is the same as it was to issue them to the company to which the aid was given before the consolidation.

It is not the bond that gives validity to the subscription, but the subscription that gives validity to the bond. And this difference runs throughout the decision cited, distinguishing it from a line of decisions which fully support the opinion pronounced in this case. The first sentence of the learned judge's opinion delivered on circuit, after stating the premises of the case, is as follows:

"This case contains an element not in the Cass county township bond cases decided at this term on demurrer, grow-

ing out of the fact that here the subscription was made after the vote was taken, to a new or consolidated company."

He also points out a further distinction—that in the case he was deciding, the substantial facts were recited on the face of the bonds, and thus gave notice to all persons who dealt in them. And near the close of his opinion he distinctly states, that if the subscription had been made to the road to which it was voted before the consolidation, the bonds would have been valid. His language is as follows:

"But the case in hand is one where no subscription was ever made to the company to which it was voted; and it might be conceded, that if it had been actually made, the right to it would pass by operation of the statute to the new company, without the concession involving the consequence of a liability upon a subscription made for the first time after the new corporation was formed."

This view of the case was approved by the Supreme Court of the United States.

The distinction taken in the case cited between a subscription to a railroad company made before consolidation, and a subscription to the new company after consolidation, by the same authority, proves the principle upon which the case before us is decided.

The petition for a rehearing is overruled.

BUSKIRK, J., dissents from the original opinion, and favors the granting of a rehearing.