IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, MAY TERM, 1878, IN THE SIXTY-
SECOND YEAR OF THE STATE.

---

WILKINSON ET AL. *v.* THE CITY OF PERU ET AL.

| 61 | 1 |
| 145 | 436 |

CITY.—*Donation of Bonds to Railroad Co.*—Under the act of May 4th, 1869, "to enable cities to aid in the construction of railroads," etc., 1 R. S. 1876, p. 299, a city incorporated under the general law of this State may, upon the petition of a majority of her resident freeholders, make a donation of bonds of the city to a railroad company, to aid the latter in constructing its railroad through or into the corporate limits of such city.

SAME.—*"Donation" Defined.*—The term "donation," as used in such act, means an absolute gift or grant, made without condition or consideration.

SAME.—*Enjoining Tax to Pay Bonds.*—*Pleading.*—Where such a donation of bonds has been made pursuant to such a petition, and a tax has been levied to pay the interest on such bonds, and also to create a sinking-fund to pay the principal, the collection of such tax can be enjoined by a tax-payer in a suit against such city and her treasurer, not on grounds sufficient merely to enjoin the making of such donation, but only on grounds constituting a valid legal defence to the payment of the bonds in the hands of the present holders.

SAME.—*Exhibits.*—Exhibits attached to the complaint in such action, consisting of copies of writings which are not the foundation of the action, form no part of the complaint, and can not be looked to by the court in determining its sufficiency.

From the Miami Circuit Court.

*C. Cowgill* and *C. E. Cowgill*, for appellants.

*N. O. Ross*, for appellees.

NIBLACK, C. J.—This was a proceeding by Daniel Wilkinson, Daniel R. Bearss, George A. Crowell, Valentine Gahs, Edward W. Lynch, Lewis Malen, Aaron B. Scott, John M. Wilson and Louisa C. Spencer, against The City of Peru and Thomas M. Crume, its treasurer, to enjoin the collection of certain taxes.

The substantial part of the complaint was as follows:

"Plaintiffs allege, that The City of Peru is a municipal corporation, under the general laws of the State of Indiana for the incorporation of cities, and that Thomas M. Crume is the treasurer and collector of taxes for said city; and plaintiffs allege, that they are the owners of personal and real property, situate in the corporate limits of said city; that the same is assessed and placed upon the tax duplicate of said city of Peru for the year 1872, the aggregate value of which, according to the valuation and appraisement made and authorized by the mayor and common council, amounts to $50,052, as will more fully appear from a copy of so much of the tax duplicate of said city for said year 1872 as pertains to the assessments and taxes of said plaintiffs, including the amount charged on said duplicate in the firm name of Scott & Gahs, said firm being composed of said plaintiffs Aaron B. Scott and Valentine Gahs, and also including the property charged on said duplicate to Charles Spencer, the same being now partly owned and represented by Louisa C. Spencer, the said Charles being now deceased, which is filed herewith, marked exhibit 'A,' and made a part of this complaint.

"And plaintiffs further allege, that, on the 24th day of May, 1872, in the council chamber of the common council of said city of Peru, the mayor and common council of said city being then [and] there in session, one Eli J. Jamison did, he being then [and] there a member of said common council, offer for consideration and adoption a resolution, a copy of which is filed herewith, marked ex-

hibit 'B,' and made a part of this complaint, which resolution was passed and adopted by said common council, resolving that they would issue the bonds of the city of Peru in the sum of $18,000, to secure the location of the machine shops of the Indianapolis, Peru and Chicago Railway Company at the city of Peru, upon the presentation of the petition of a majority of the resident freeholders of said city for that purpose; and plaintiffs allege, that said resolution embraced no other object than the securing of the machine shops of said railway company at said city of Peru, and that the same was adopted by said common council for no other purpose whatsoever.

"And plaintiffs further allege, that, on the 31st day of May, 1872, said common council made and entered into a contract between the Indianapolis, Peru and Chicago Railway Company and said city of Peru, a copy of which contract, and so much of the record of said common council as shows the acceptance and ratification of the same, are filed herewith, marked exhibit 'C,' and made a part of this complaint, whereby said city agreed to and with said railway company, and obligated itself to the same, to procure the conveyance of certain real estate, particularly described in said exhibit 'C,' at the cost and expense of said city, and which amounted to the sum of $7,600, to said railway company, and to pay said railway company, in addition to the cost of said real estate, the sum of $10,000, within two months from the date of said agreement set out in said exhibit 'C.'

"And plaintiffs allege, that, on said 31st day of May, 1872, a petition, signed by a portion of the resident freeholders of said city of Peru, said to be a majority thereof, was presented to said common council, a copy of which is hereto attached, marked exhibit 'D,' and made a part of this complaint, asking said common council to make a donation not to exceed the sum of $18,000, for the pretended purpose, amongst other things, of aiding said Indianapolis, Peru and Chicago Railway Company in con-

structing its said road from the north end of the bridge on said railway company's road, where the same crosses the Wabash River west of Peru, to the depot of said company in the city of Peru, the distance between the points in said petition named being about five thousand feet only, and said railway company, at the time of the presentation of said petition and the action of said common council thereon, being the owner of a railroad and operating the same between said points, and having been so engaged in operating and running cars upon said railroad into and from said city of. Peru, for the purpose of carrying freight and passengers over the same, between the said points named in said petition, and within the corporate limits of said city, for more than fifteen years last past, supplying and affording to the city of Peru and the tax-payers thereof all the advantages and benefits both for travel or freight upon and over said road between said points, or to and from any point or points on the line of said railway company's railroad, from the city of Indianapolis, the southern terminus thereof, to the depot named in said petition, situated in the city of Peru, in as full, ample and complete a manner as the same are now afforded to and enjoyed by said tax-payers, and as fully and completely as any road operated between the points named in said petition need to or can supply such railroad facilities and advantages.

"And plaintiffs further aver, that, upon the presentation of said petition, said common council adopted an ordinance donating to said Indianapolis, Peru and Chicago Railway Company the sum of $18,000, to be paid by issuing the bonds of said city, a copy of which ordinance is filed herewith, marked exhibit 'E,' and made a part of this complaint.

"And plaintiffs further aver, that, upon the same day, to wit, [the] 31st day of May, 1872, the common council of said city adopted another ordinance, authorizing the issuing and delivery of the bonds of said city of Peru, in the

sum of $18,000, in payment of the donation by said city
to said railway company, made as aforesaid, and appoint-
ing a committee to negotiate the sale of [the] same, and to
pay to said railway company $10,000 of the proceeds of
the sales of said bonds, and, of the residue thereof, such
sum as might be necessary to procure the conveyance to
said railway company [of] the real estate described in ex-
hibits ' C ' and ' E,' above set out, copies of which ordi-
nance and the report of said committee, together with
the action of the common council of said city, are filed
herewith marked 'F' and ' G,' respectively, and made
parts of this complaint.

"And plaintiffs further allege, that afterward, to wit,
on the — day of ——, 1872, said common council of the
city of Peru, for the purpose of imposing and levying a
tax upon the property of plaintiffs, together with the
property of other tax-payers of said city, for the purpose
of creating a sinking-fund for the payment of the debt,
made and contracted by said common council, to enable
them to make the donation to said railway company as
aforesaid, made and adopted an ordinance, of which the
following are sections, viz. :

"' Section 8. That, for the purpose of creating a sink-
ing-fund for the payment of the public debt of said city,
incurred by donation to the Indianapolis, Peru and Chi-
cago Railway Company, on the 31st day of May, 1872,
there is hereby levied, and shall be assessed and collected,
a tax of eighteen cents on each $100 valuation of the
real and personal property liable to be taxed in said city,
in addition to the above taxes for said year.

"' Section 9. That, for the purpose of paying the inter-
est on the bonded debt mentioned in section eight of this
ordinance, due from said city, there is hereby levied, and
shall be assessed and collected, an additional tax of twenty-
three cents on each $100 valuation of all real and per-
sonal property liable for such tax in said city for the fis-
cal year ending June 1st, 1873.'

"And plaintiffs allege, that, by the sections of the ordinance above set out, the aggregate amount of taxes, without penalty and interest, levied and assessed upon and against plaintiffs' property for the year 1872, to pay interest on, and create a sinking-fund for the purpose of paying, the debt made by said donation, is $2,521.12, all of which taxes, plaintiffs allege, are illegal and void:—

"1st. Because said city of Peru, and the common council thereof, had no authority to make donations of the funds and moneys of said city, or to tax the property of the citizens thereof, to pay donations made for the purposes named in the resolution, set out in exhibit 'B.'

"2d. The common council of said city had no authority of law to enter into and execute the contract set out in exhibit 'C,' and had no authority to make donations, levy and collect taxes for the objects named and stipulated in said contract, nor for any one of said objects.

"3d. The petition set out in exhibit 'D,' purporting to ask a donation in aid of the construction of a railroad, and the action of the common council of said city in pretending to grant the same, are a fraud upon the taxpayers of said city, in this: Petitioners ask, and the common council pretend to make, a donation to aid in the construction of the Indianapolis, Peru and Chicago Railroad, from the north end of the bridge, at the crossing of the Wabash river, to the said company's depot in the city of Peru, when, in fact, as petitioners and said common council well knew, said railroad had been constructed between said points, and the same had been in operation for the last fifteen years, within the corporate limits of said city.

"4th. Said railway constructed no new line of railroad, in accordance with the prayer of said petition, but simply made a slight change in the location of their old road, for a distance of about five thousand feet only, furnishing no railroad facilities to said city or the tax-payers thereof, that were not furnished previous to the change.

" 5th. The change made in said railroad was not a change in furtherance of a public use, purpose and object, and any tax levied in aid thereof is illegal and void.

". 6th. Because the law did not then, nor does it now, authorize the common council of the city of Peru to create a debt, issue bonds of said city and tax the property of plaintiffs and others in payment thereof, for the benefit of private corporations, in the erection of machine, car and repair shops for said company's road, and the purchase of real estate for the use and benefit of such private corporations only, in the manner named and described in the resolution, contract and ordinances set out in the exhibits accompanying this complaint and made a part hereof.

" 7th. And plaintiffs allege, that the donation by said city, made to said railway company, the debt created and the bonds issued in pursuance thereof, and the taxes assessed and levied for the purpose of paying either principal or interest thereon, were each and all of them acts done and performed by said city of Peru for the sole and exclusive purpose of inducing and procuring the Indianapolis, Peru and Chicago Railway Company to locate and establish the machine, car and repair shops of said company's road at the city of Peru, and for no other purpose whatever; and that so much of the petition presented by a portion of the resident freeholders of said city, of the action of the common council thereon, and the acts of the said railway company in changing their line of road between the north end of the Wabash River bridge and the said railway company's depot in the city of Peru, were acts and things done and performed by said petitioners, common council and railway company, as a mere pretext for the assessment and levy of the taxes complained of, and were a fraud upon the rights of the tax-payers of said city, and especially of these plaintiffs.

" And plaintiffs allege, that said tax duplicate is now in the hands of the defendant Crume, as treasurer of

said city, with the amount of taxes above stated charged thereon against plaintiffs and their property, and that said treasurer has levied upon the property of plaintiffs Bearss, Crowell, Gahs, Spencer and Scott, and is threatening to levy on the property of the other plaintiffs, and advertised the property levied on for sale, to make [said] illegal taxes."

Wherefore the plaintiffs prayed, that said city of Peru and the said Crume, as the treasurer thereof, might be restrained from selling the property of the plaintiffs for the payment of such alleged illegal taxes, and from the collection of such taxes in any other manner whatsoever, and that said city might be enjoined and inhibited from either assessing, levying or collecting any other or further taxes for the payment, or on account, of the pretended donation in aid of the construction of a portion of the Indianapolis, Peru and Chicago Railway, as above stated, and for all other proper relief.

The defendants answered in seven paragraphs.

The first paragraph was in general denial. The others set up special matters in defence of the action.

The plaintiffs demurred severally to the second, third, fourth, fifth, sixth and seventh paragraphs of the answer, for want of sufficient facts to constitute defences.

The question of the sufficiency of the complaint being thus indirectly raised, the court held it to be insufficient, and the plaintiffs electing to stand by their complaint, judgment was rendered against them upon demurrer. *Batty* v. *Fout*, 54 Ind. 482.

The provisions of the act of May 4th, 1869 (1 R. S. 1876, p. 299), "to enable cities to aid in the construction of railroads," etc., authorize a city incorporated under the general laws of this State, upon the petition of a majority of the resident freeholders of such city, to extend such aid in the construction of a railroad, in either of two ways: *First*, by subscribing to the stock of the company

constructing the road; or, *Second*, by making a donation in money, or the bonds of such city, to such company.

The term "donation," as used in said act, means an absolute gift or grant, without any condition or consideration whatever. *The Indiana N. & S. R. W. Co.* v. *The City of Attica*, 56 Ind. 476.

After the presentation of such a petition to the common council of the city, and after said railroad shall be so far completed as to admit the running of trains over it between the points designated in the petition, such subscription or donation becomes obligatory on the common council of the city, and it is made the duty of the common council to do thereafter whatever is necessary to carry into effect the substantial meaning of the petition; "and for any debt created in pursuance of the provisions of this section in carrying out the intentions of the petitioners aforesaid, the common council shall add to [the] duplicate of such years thereafter, a levy sufficient to pay the annual interest on such debt or loan with an addition of not less than five cents on the one hundred dollars to create a sinking-fund for the liquidation of the principal thereof, which fund with all the increase thereof shall be applied to the payment of such debt and to no other purpose." 1 R. S. 1876, p. 299.

The sufficiency of the complaint before us must be judged of by the facts averred in it, and not by the recitals contained in any of the exhibits which accompany it. Those exhibits, not being copies of any written instrument constituting the foundation of the action, formed no part of the complaint within the meaning of section 78 of the civil code, and hence can not be resorted to, to supply any omissions in the averments of the complaint. *Wharton* v. *Wilson*, 60 Ind. 591; *Pollard* v. *Bowen*, 57 Ind. 232; *Wilson* v. *Vance*, 55 Ind. 584; *Noble* v. *McGinnis*, 55 Ind. 528.

Some of the matters, therefore, which are contained in the exhibits, were not properly before the court below,

and are, consequently, not so before us here, as parts of the complaint.

Some of the averments of the complaint would have tended to make out a case for an injunction against the city of Peru, to prevent the issuing of the bonds voted, as alleged, by its common council, if such a remedy had been invoked before these bonds were issued, but we think the complaint in the present aspect of the case, does not go far enough to present a case for an injunction to restrain the collection of the taxes complained of.

Although it is not so distinctly averred in the complaint, enough is alleged to authorize us to infer, that, on the 31st day of May, 1872, the common council of the city of Peru, on the petition of a majority of the freeholders residing in said city, adopted an ordinance donating the sum of eighteen thousand dollars to the Indianapolis, Peru and Chicago Railway Company, to aid in the construction of a small portion of its line of road, and authorizing the issuing of bonds of the city for the payment of such donation. Also, that the bonds of said city, not exceeding the said sum of eighteen thousand dollars, had been issued, and in some manner disposed of, in payment of said donation.

As has been seen, the city of Peru was not only authorized, but required, to make such donation, on the presentation of a proper petition; and, in the absence of any distinct allegation to the contrary, we must assume, that the donation in this case was made on what at least purported to be a proper petition.

The ordinance making such donation created an apparent debt against the city of Peru, which had to be provided for by taxation; and the apparent debt thus created is now represented by bonds of said city, issued in pursuance of the provisions of said ordinance.

If, under these circumstances, these bonds are now in the hands of innocent holders, no valid defence can be made against them, and they may have thereby become, if they

were not so at first, a binding debt upon the city, for which taxes must be assessed and collected to pay. *Van Hostrup* v. *Madison City*, 1 Wal. 291; *City of Lexington* v. *Butler*, 14 Wal. 282; *Commissioners of Knox Co.* v. *Aspinwall*, 21 How. 539; *Moran* v. *Commissioners of Miami County*, 2 Black, 722; *The City of Mt. Vernon* v. *Hovey*, 52 Ind. 563.

For aught that appears in the complaint, these bonds constitute an outstanding debt against the city of Peru, which can be enforced by ordinary legal proceedings.

Until it is shown that the city has a valid legal defence against these bonds in the hands of the present holders, it would be manifestly improper to enjoin the collection of taxes assessed for their payment.

As the complaint fails to show that the city has any such defence to these bonds, we are driven to the conclusion that it was bad on demurrer, and that the court did not err in holding it insufficient.

The judgment is affirmed, at the costs of the appellants.