## THE INDIANA NORTH AND SOUTH R. W. CO. v. THE CITY OF ATTICA.

CITIES AND TOWNS.—*Donation to Railroad.—Statute Construed.*—The provisions of the act of May 4th, 1869, (1 R. S. 1876, p. 299,) "to enable cities to aid in the construction of railroads," etc., authorize a city incorporated under the general law of this State to extend such aid, in the construction of a railroad, in either of two ways, viz.: *first,* by subscribing to the stock of such enterprise; or, *second,* by making a donation thereto.

The Indiana North and South R. W. Co. *v.* The City of Attica.

SAME.—The term "donation," as used in such act, means an absolute gift or grant of a thing, without any condition or consideration.

SAME.—*Contract.*—The provisions of such act do not authorize a city to make a contract to aid a railroad company to construct its road, by delivering to it a certain sum in money or bonds, in consideration of the agreement of such company to erect and maintain its machine shops in or near such city, or, on its failure so to do, to reimburse such city in such sum.

SAME.—*Petition to Common Council.*—*Ordinance of.*—*Surplusage.*—*Pleading.*—*Bond.*—*Evidence.*—*Agreed Statement of Facts.*—A majority of the resident freeholders of a city petitioned its common council to aid a railroad company in the construction of its line of road, by issuing and donating to it a certain sum in bonds of such city, in "*consideration* that said" company should "permanently locate and maintain" its machine shops in or adjacent to such city, "and, on failure so to do," reimburse such city in such sum; and thereupon such common council adopted an ordinance, providing for the issue and delivery of such bonds to such company, upon its first executing and delivering to such city a bond, in a certain amount, with surety subject to the approval of the common council, conditioned for the reimbursement of such sum, upon its failure to so erect and maintain such shops. The railroad company, having constructed its line of road, brought an action against such city to compel her officers to issue and deliver such bonds to the plaintiff.

*Held,* that such petition, and the ordinance founded thereon, are unauthorized by law and void.

*Held,* also, that the clause of such petition requiring the erection and maintenance of such shops can not be treated as surplusage, but renders the petition illegal as a whole.

*Held,* also, that the complaint of the company is insufficient on demurrer.

*Held,* also, that an answer averring the failure of the plaintiff to file its bond is a sufficient answer to such complaint.

*Held,* also, that the fact that the word "condition," instead of the word "consideration," as used in such petition, was used in the agreed statement of facts upon which the cause was submitted for trial, does not cure the petition.

*Held,* also, that such petition is not cured by the fact that its terms are more favorable than was authorized by the statute.

SAME.—A statute which grants to a city rights and powers unknown to the common law should be strictly construed.

From the Fountain Circuit Court.

*J. E. McDonald, J. M. Butler, F. B. McDonald, G. C. Butler, S. H. Buskirk* and *J. W. Nichol,* for appellant.

*M. Milford, C. Baker, O. B. Hord* and *A. W. Hendricks,* for appellee.

HOWK, J.—The appellant, as plaintiff, filed a duly veri-fied complaint, in the court below, against the appellee, as defendant.

In said complaint, the appellant alleged, in substance, that on the 13th day of February, 1871, the appellant being then engaged in the construction of its railway, run-ning through portions of Fountain county, Indiana, and upon which railway the city of Attica was situated, a majority of the freehold citizens of said city, two hundred and eight in number, petitioned the mayor and common council of said city of Attica to cause to be issued and donated to the appellant by the appellee, to aid in the construction of appellant's railway, sixty thousand dollars, in bonds of said city, one-half of the amount in bonds of five hundred dollars each, and the residue in bonds of one thousand dollars each, said bonds payable in ten years from date of issue, reserving the right to extend to twenty years, with interest at the rate of seven per cent. per annum, payable semi-annually at the First National Bank of Attica, Indiana, and providing that said bonds should be issued as soon as could conveniently be done, of the date of March 1st, 1871, and made payable to James D. McDonald, Peter S. Veeder, and John Nave, trustees, or order, to be by them delivered to the appellant, when the appellant had completed its road from Attica to or near Coalfield station, in said Fountain county, so far as to admit the running of a train of cars between said city of Attica and said station; the said railway to be constructed through the central portion of Fountain county, commenc-ing at Attica and crossing the Indianapolis, Bloomington and Western Railway near Coalfield station, in said county; a copy of which petition was filed with, and made part of, said complaint. And the appellant said, that on said first named day the prayer of said petition was granted, by a unanimous vote of the common council of said city of Attica; that the appellant accepted said petition and the granting thereof by said common council, in its behalf

and as aid to the construction of its said road, and did construct and complete its said road from said city of Attica, through the central portion of said Fountain county, to the point at which its line of road crossed the Indianapolis, Bloomington and Western Railway, in said county, at or near said Coalfield station, (now called Veedersburg,) so as to admit of the running of trains of cars over said road between said points, by April, 1872; and that from April, 1872, continuously up to the commencement of this suit, appellant had caused trains of cars to be run over said road between said city of Attica and said crossing or junction with the Indianapolis, Bloomington and Western Railway. And appellant further averred, that the appellant, on or about the 29th day of May, 1872, by its board of directors, passed an order permanently locating the machine shops of said road, whenever the same should be built, at the city of Attica, which said order remained in full force and unrevoked; that the appellant had fully kept and complied with all the requirements and conditions of said petition, and did so keep and comply with the same, by the month of April, 1872, and that in said month of April, 1872, the appellant became and was entitled to said sixty thousand dollars of bonds, in said petition named, and had ever since been, and still was, entitled to said bonds and the interest thereon. And appellant said, that the appellant had repeatedly demanded said bonds from the mayor and common council of said city of Attica, and that the appellee, by its said officers, had and still neglected and refused to deliver, or cause to be delivered, to the appellant the said bonds or any part thereof.

Wherefore, and by reason of the facts above stated, the appellant prayed judgment, that a mandate might issue from the court below, ordering and directing the mayor and common council of said city of Attica, and the proper officers of said city, to issue and deliver, or cause to be delivered, to appellant said sum of sixty thousand dollars,

in the bonds of said city, in accordance with said petition set forth in said complaint; and appellant prayed judgment against the appellee for seventy-five thousand dollars, and for all other proper relief.

The petition of the freeholders of the city of Attica, which was made a part of appellant's verified complaint by copy thereof filed therewith, is in the words and figures following, to wit:

"To the Mayor and Common Council of the City of Attica, Fountain county, Indiana:

"The undersigned respectfully represent, that they are resident freeholders and citizens of the city of Attica, Indiana, and they petition your honorable body to cause to be issued and donated by the city of Attica to the Indiana North and South Railway Company, the line of which runs through or near the corporate limits of said city, to aid in its construction, sixty thousand (60,000) dollars, one-half thereof in bonds of five hundred (500) dollars each, and the residue in bonds of one thousand (1,000) dollars each, and payable in ten years from date of issue, reserving the right to extend to twenty (20) years, with interest at the rate of seven (7) per cent. per annum, payable semi-annually at the First National Bank of Attica, Indiana, and provided that the said bonds shall be issued as soon as can conveniently be done, of date of the 1st of March, 1871, and made payable to James D. McDonald, Peter S. Veeder and John Nave, trustees, or order, to be held by them in the trust that they will deliver the same to the said railway company, when they shall have completed their road from Attica to or near Coalfield station, in said Fountain county, so far as to admit the running of a train [of] cars between the above named points, and the iron laid to admit of running of trains. The said railway to be constructed through the central portion of Fountain county, commencing at Attica, in Fountain county, crossing the Indianapolis, Bloomington and Western Railroad near Coalfield station, in said

county. The donation to [be] made upon the consideration that said railway company shall permanently locate and maintain their shops for the manufacture of their rolling stock in or adjacent to the city of Attica, and, on failure so to do, said company is to reimburse said city in the sum of sixty thousand (60,000) dollars."

To appellant's said complaint, the appellee answered in four paragraphs.

The appellant demurred, separately and severally, to the second, third and fourth paragraphs of appellee's answer, alleging as the ground of objection to each of said paragraphs, that it did not state facts sufficient to constitute a defence to appellant's action. As to the second and fourth paragraphs of answer, appellant's demurrer thereto was sustained by the court below, and appellee excepted; and as to the third paragraph of answer, the demurrer was overruled, and to this decision appellant excepted. No question is made in this court upon the rulings of the court below on the second and fourth paragraphs of answer, and they need not be further noticed.

The first paragraph of appellee's answer is a general denial of the allegations of appellant's complaint.

In the third paragraph of its answer, the appellee alleged, in substance, that it admitted that the appellant petitioned the appellee, in, with, and by the petition set forth in appellant's complaint by exhibit, at the time averred in said complaint to wit, the 13th day of February, 1871; that two days afterward, on the 15th day of February, 1871, the appellee, by its city council, met, at which meeting Edgar B. Thomas, Esq., appellant's president, was present; and, at said meeting, said city council passed an ordinance to carry out, and put into full force and effect, the substantial requirements of said petition, which said ordinance, with the preliminary proceedings had by said city council and the adoption thereof, was, by copy of the record of said city, appended to said answer as an exhibit;

that the said Thomas then and there expressed himself as fully satisfied with all the provisions of said ordinance; that afterward, to wit, on the 13th day of November, 1871, the appellant presented a communication to appellee's common council, setting forth, *inter alia*, that appellant was unable to furnish security, as was by said ordinance contemplated, and proposing to furnish another and different security in lieu thereof, as shown by copy of the records of said city, appended to said answer as an exhibit; that said proposition was not entertained by said city council; that afterward, to wit, on the 27th day of November, 1871, the appellant presented a communication to appellee's city council, wherein the appellant set forth the passage of certain resolutions, locating their machine shops in said city of Attica, on condition of the reception of sixty thousand dollars in the bonds of said city, as by the petition called for, otherwise not, all of which would more fully appear if reference were had to exhibit " G," annexed to said answer; and a committee was appointed to report on said proposition, as said last named exhibit would show; that on the 8th day of January, 1872, the said committee reported a declination of the appellant's last named proposition, and their report was concurred in, as would appear by reference to exhibit " H," appended to said answer; that the appellant had not located any shop in the city of Attica for the manufacture of its rolling stock, as by the said petition and the said ordinance required; that the appellant had not executed and delivered to the mayor of the city of Attica a bond to the city of Attica, Indiana, in the penal sum of sixty thousand dollars, with good and solvent security, to the approval of the common council of said city, conditioned that the appellant should faithfully and fully perform the stipulations set forth in the petition authorizing the said donation of sixty thousand dollars, to wit, " that said railway company shall permanently locate and maintain their shops, for the manufacture of their rolling stock, in or

adjacent to the city of Attica, and, on failure so to do, to reimburse said city of Attica in the sum of sixty thousand dollars, as by the terms of said ordinance," (copied in exhibit " B," section 6 thereof,) required; and that the appellant was not entitled to have said sixty thousand dollars of bonds until it furnished the said penal bond. Wherefore appellee prayed judgment for costs.

As before stated, appellant's demurrer to this paragraph of answer, for the want of sufficient facts therein, was overruled by the court below, and the appellant excepted. We will hereafter notice and consider such of the exhibits, mentioned in and made parts of this paragraph of answer, as we may deem material and necessary to the proper understanding and decision of this cause.

And the appellant replied to this third paragraph of answer by a general denial of the matters alleged therein.

And the action, being at issue, was tried by the court below without a jury; which trial resulted in a finding made, and judgment rendered by the court, in favor of the appellee and against the appellant.

Upon written causes filed, the appellant moved the court below for a new trial of this action; which motion was overruled by the court, and to this decision the appellant excepted. The evidence on the trial, in the court below, is properly in the record.

In this court, the appellant has assigned the following alleged errors:

1st. The court below erred in overruling appellant's demurrer to the third paragraph of appellee's answer; and,

2d. That the court below erred in overruling the appellant's motion for a new trial.

Practically, these alleged errors present for our consideration the same questions. For, if it can be said that the matters stated in the third paragraph of appellee's answer constitute a defence to appellant's action, it will hardly be claimed by appellant, that there is not evidence

in the record tending to sustain each material averment, in said paragraph of answer.

The questions which underlie this cause, and which must be determined before a right decision can be reached, relate to the sufficiency and legality of the acts and proceedings of the appellee, its resident freehold citizens, and its common council, in connection with its proposed donation to the appellant of sixty thousand dollars. All these acts and proceedings, in their inception and at every step in their progress, must have strictly conformed to, and complied with, the requirements of law, in order to give the appellant a valid and legal claim to the proposed donation. The law of this State, under which these acts and proceedings were had, is an act entitled "An act to enable cities to aid in the construction of railroads, hydraulic companies, and water-powers, and declaring an emergency," approved May 4th, 1869. By the 1st section of this act it is provided, as follows:

" That any city, incorporated under the general law of this State, upon petition of a majority of the resident freeholders of such city, may hereafter subscribe to the stock of any railroad, hydraulic company, or water-power, running into or through such city, or near the corporate limits of said city, or to make, on petition of the majority of the resident freeholders of such city, donations in money or the bonds of such city, to aid in the construction of any such railroad, hydraulic companies, or water-power; subject, however, to the limitations, direction and restriction named in the provisos to the 60th section of the act entitled, 'An act to repeal all general laws now in force for the incorporation of cities, prescribing their powers and rights, and the manner in which they shall exercise the same, and to regulate such other matters as properly pertain thereto,' approved March 14th, 1867." 1 R. S. 1876, p. 299, note 1.

The provisos of the 60th section of the general law of this State for the incorporation of cities read as follows:

"*Provided,* That said donations shall not be payable either in money or bonds until the roads or bridges or public improvements or public works, in aid of which it is given, shall be so far completed as to admit the running of trains from the point of commencement to such point or points as are designated in the petition, in case of a railroad or railroad bridges, or the passage of wagons in the case of other roads or bridges, and in case of public improvements or public works upon the completion thereof; and when so far completed it shall be obligatory on the common council of said city to contract and do whatever may be necessary, to carry into effect the substantial meaning of such petition, and the obligation herein enjoined may be enforced in the courts of this State having competent jurisdiction, on the application of any signer of such petition, or president of any road or bridge company in behalf of which such donation may have been made, at any time after said petition or petitions have been presented to such common council, and for any debt created in pursuance of the provisions of this section in carrying out the intentions of the petitioners aforesaid, the common council shall add to duplicate of such years thereafter, a levy sufficient to pay the annual interest on such debt or loan with an addition of not less than five cents on the one hundred dollars to create a sinking fund for the liquidation of the principal thereof, which fund with all the increase thereof shall be applied to the payment of such debt and to no other purpose." 1 R. S. 1876, p. 299.

The above is all the legislation of this State, directly applicable to the matters now under consideration. The power, under which the appellee, its resident freehold citizens, and its common council are supposed to have acted in the proceedings had by them in connection with appellee's proposed donation to the appellant, is wholly conferred by the said act of May 4th, 1869, which we have set out in full, except a section containing an emer-

gency clause. And "the limitations, direction and restriction" of the power so conferred are to be found in the proviso in the 60th section of the general law for the incorporation of cities, which proviso we have also set out in full.

It will be observed, that by the act of May 4th, 1869, "any city, incorporated under the general law of this State, upon petition of a majority of the resident freeholders of such city," may do either one of two things, and only two, in connection with certain private enterprises, of a *quasi* public nature, mentioned in said act: 1. The city may subscribe to the stock of such enterprise; in which case, in theory at least, the city will get something of value in return for the amount of the subscription. 2. Or the city may make a donation to such enterprise in aid of its construction; and, in this case, the city will get nothing directly in return for its donation, but the theory of the law is, that benefits will enure to the city from the location of the thing constructed, in aid of which the donation is made, in or through such city or near its corporate limits. These two things, and only these, the city may lawfully do, under and by virtue of the power conferred in and by the said act, in the mode therein prescribed. And, under the power so conferred, the city may not, in our opinion, under the name of a donation, make a valid and legal contract, whereby, in consideration that a railroad company will locate and maintain its machine shops in or near such city, or will do any other act or thing of value, the city will give or donate to such railroad company the sum of sixty thousand dollars, or any other sum, therefor. The act in question was not passed, as we think, to enable cities to make contracts of bargain and sale, under the color or name of donations; and such a contract, as the one we have mentioned, was certainly not provided for in or by the terms of said act.

A donation is defined by Bouvier to be "the act by

which the owner of a thing voluntarily transfers the title and possession of the same from himself to another person, without any consideration." Webster defines a donation to be " that which is given or bestowed; that which is transferred to another gratuitously, or without a valuable consideration; a gift; a grant."

In this case, the petition of the resident freeholders of the city of Attica shows, upon its face, that the idea of a donation or gift was not in the minds of the petitioners, at the time the petition was signed. The petitioners prayed the appellee's common council not to make a donation or gift to the appellant, but, under the name of a donation, " upon the consideration" expressed in the petition, they prayed the common council to give a certain sum in bonds, as the purchase-money, for a certain thing, the price of which had been, before that time, apparently agreed upon. The language used in the petition was, that the proposed donation was " to be made upon the consideration that said railway company shall permanently locate and maintain their shops, for the manufacture of their rolling stock, in or adjacent to the city of Attica, and, on failure so to do, said company are to reimburse said city in the sum of sixty thousand (60,000) dollars." The last clause of this language, quoted from the petition, is inconsistent with, and, in fact, utterly precludes the idea of, any donation or gift by the appellee to the appellant, as a matter even contemplated by the petitioners. Fairly construed and interpreted, the petition shows that the appellant had in view the erection and maintenance of machine shops, at some point, for the manufacture of its rolling stock; a majority of the resident freeholders of the city of Attica were desirous of securing the location and maintenance of these machine shops in, or adjacent to, said city of Attica; and, for the purpose of securing such location and maintenance of said machine shops, and not for the purpose of aiding in the construction of appellant's railroad, these resident freeholders presented their

said petition to appellee's common council, praying nominally for a donation to the appellant, but really for the purchase from the appellant of the location and maintenance of its machine shops, in or adjacent to said city of Attica, at and for the said sum of sixty thousand dollars, and stipulating that, on appellant's failure so to locate and maintain its machine shops, the appellant should reimburse the appellee in the same sum of sixty thousand dollars.

This construction of the petition is in harmony with the action had by appellee's common council, upon said petition at the time of its presentation. An ordinance was adopted by said common council, to carry out and give effect to said petition; by the 6th section of which said ordinance, it was provided, as follows:

"Sec. 6. That said Indiana North and South Railway Company shall execute and deliver to the mayor of the city of Attica, *prior to the delivery* of the bonds herein provided, a bond to the city of Attica, Indiana, in the penal sum of sixty thousand dollars ($60,000), with good and solvent security, to be approved by the common council, conditioned that the said Indiana North and South Railway Company shall faithfully and fully perform the stipulations set forth in the petition authorizing this donation, to wit: That said Railway Company shall permanently locate and maintain their shops for the manufacture of their rolling stock, in or adjacent to the city of Attica, and, on failure so to do, reimburse said city of Attica in the sum of sixty thousand dollars ($60,000); else this ordinance to be null and void."

A mere glance at this section of this ordinance will suffice to show, that appellee's object in these proceedings was not to aid in the construction of appellant's railroad, and that it was not contemplated nor intended by the appellee to make any donation or gift to the appellant for any purpose. The simple truth is, and the attempt to cover it up under fictitious names and pretences only

makes it the more manifest, that the appellant had something to sell and dispose of, which the appellee, and its citizens and officers, wanted to secure and were willing to pay the price for, if they could be assured of getting the thing purchased, but not otherwise. Therefore, it was stipulated in the petition, and in the ordinance which followed the petition, that, in the event of the appellee's failure to get the thing purchased, the appellant should reimburse the appellee in the price paid therefor. And therefore it was, that the appellee's common council, "in carrying out the intentions of the petitioners," in and by the said 6th section of the said ordinance, provided, that, prior to the delivery to the appellant of the price agreed upon, or of the donation, as it was called, for the location and maintenance of appellant's shops, in or adjacent to said city of Attica, the appellant should execute and deliver to the mayor of said city a bond to said city of Attica, in the penal sum of sixty thousand dollars, being the amount of the so-called donation or price agreed upon, and conditioned that the appellant should faithfully perform the stipulations set forth in said petition.

In our opinion, the record of this cause does not show a *bona fide* donation, or intended donation, by the appellee to the appellant, within the purview and meaning of the law, of any sum whatever. On the contrary, we think that the record clearly shows a transaction between the said parties, which the law did not contemplate and has made no provision for. It is perfectly manifest, that the appellee did not, nor did its resident freeholders, nor did its common council, ever at any time intend to make any donation, in any sense of the word, to the appellant, either to aid in the construction of its railroad or for any other purpose. The sole object had in view by appellee's resident freeholders, and by its common council, evidently was to secure the location and maintenance of appellant's shops, for the manufacture of its rolling stock, in or

adjacent to said city of Attica. For this object, but for no other, the appellee was willing to pay the amount mentioned in said petition and ordinance, and that amount the appellant was willing to accept. But, before any payment should be made, the appellee insisted that a bond should be given by appellant, with approved security, for the repayment to the appellee of the entire amount paid, in the event of appellant's failure to locate and maintain its said shops in, or adjacent to, said city of Attica. Of the said acts and proceedings of appellee's resident freeholders and common council, the appellant, by and through its president, had notice, and was fully cognizant, at or about the time they occurred.

We hold, that the record of this cause shows very conclusively, that there was a contract or agreement of bargain and sale between the appellant and the appellee, in connection with the location of appellant's machine shops in or near the city of Attica, for a price agreed upon; that the acts and proceedings of the resident freeholders and of the common council of said city of Attica, set out in the record, were merely an attempt to accomplish indirectly what could not be done directly, namely, to consummate, under the form and name of a donation, the said contract or agreement of bargain and sale; and that the said acts and proceedings were not authorized by the said act of May 4th, 1869, or by any other law of this State.

In any view of the case, the petition of the resident freeholders to the common council of the city of Attica was not, in our opinion, a legal petition under the provisions of the said act of May 4th, 1869, hereinbefore cited. It contained a direction and restriction on the action of the said common council, in connection with the subject-matter of said petition, which are not to be found among "the limitations, direction and restriction named in the provisos to the 60th section" of the general law for the incorporation of cities, and which were therefore not

authorized by law. It was not competent for appellee's common council to disregard the consideration clause of said petition, or to reject it as mere surplusage. However unauthorized by law this clause was, yet it was a material part of the petition as presented, and it can be readily seen, that this clause was the means used, the inducement held out, for the purpose of obtaining the signatures of the resident freeholders of the city of Attica to said petition. The clause in question was not warranted by law, and, in our opinion, it vitiated and rendered illegal the entire petition. It was impossible for the common council to overlook this clause. Although illegal, it could not be treated or considered as a mere nullity; for, evidently, it was the consideration and the real foundation of the petition. And so, also, in regard to the action of the common council on said petition, the ordinance, adopted for the purpose of carrying the said petition into effect, can not be regarded as a mere nullity, simply because the 6th section of said ordinance, following the language used in said petition, imposed a direction or restriction upon the appellant, which was not authorized by the law under which the common council acted. If, however, this section of the ordinance had not been grounded upon said petition, and had not evidently been intended to give force and effect to the plain will and intention of the resident freeholders of the city of Attica, as expressed in said petition, we might have regarded it as mere surplusage, or treated it as an absolute nullity.

Upon the whole case, our conclusion is, that the acts and proceedings of the resident freeholders, and of the common council, of the said city of Attica, as set forth and contained in the record of this cause, were not sufficient, under the law of this State, to create any liability, in favor of the appellant and against the appellee, for the payment of the proposed donation, which the courts of this State can enforce.

The third paragraph of the appellee's answer was a good

and sufficient defence to appellant's complaint, upon the theory, at least, that a bad answer is a good enough answer to a bad complaint. But, upon the theory that there was ever any legal vitality in the proceedings, counted upon by appellant in its complaint as constituting its cause of action, the facts stated in the third paragraph of appellee's answer, in our opinion, constituted a good defence to this cause of action. The court below committed no error in overruling appellant's demurrer to this third paragraph of answer.

And, from what we have already said, it is hardly necessary for us to add, as we do, that in our opinion there was no error in the decision of the court below in overruling the appellant's motion for a new trial.

The judgment of the court below is affirmed, at the costs of the appellant.

ON PETITION FOR A REHEARING.

BIDDLE, J.—It is insisted by the appellants, in their petition for a rehearing, that the word "consideration," as used in the latter part of the petition,—" the donation to be made upon the consideration that," etc.,—should be "condition;" that, in the agreed state of facts, upon which the case was submitted, the word "condition" was used, and therefore must govern. That the word "donation," as used in the statute, does not necessarily imply the absence of an inducement; that a donation is always moved by some inducement which must not be confounded with the "consideration" of a contract, or a "condition" upon which its validity depends; that a consideration is not inconsistent with the meaning of "donation," in its ordinary sense; that the benefits supposed to be derived from railroads in the vicinity of the donor is always the inducement which moves the donation, and is indeed inseparable from it; that notwithstanding there is another inducement in this case, besides the supposed

benefit of the contiguous railroad, namely, the location and maintenance of the machine shops, the bonds must be held to have been issued as a donation, and not upon a contract.

We do not regard the difference between the word "consideration," as used in the petition, and the word "condition," as used in the agreed state of facts, as being important. If the donation was to be made "upon the consideration that," or upon condition that, the railway company should locate and maintain its shops near the city of Attica, it would not substantially change the meaning of the words, as used in the petition and the agreed state of facts. Either of them imports a consideration which would sustain a contract, and neither of them is consistent with a donation. Besides, the latter clause of the petition, namely: that, on failure to so locate and maintain the machine shops, "said company is to reimburse said city in the sum of sixty thousand dollars," is wholly inconsistent with the proposition to donate the bonds to the company. A donation which is made "upon the consideration that," or "upon condition that," the company which receives it will locate and maintain its machine shops at a particular place, and, failing to do so, will reimburse the donor in the amount of the donation, is a contract, whatever name may be given to it. The obligation to so locate the machine shops, or, on failure to do so, reimburse the city of Attica, can not, with propriety in the use of language, be called a donation. A legal instrument must be construed according to the meaning of its words, by whatever name the instrument itself may be called.

The petitioner further insists, "that the contract of donation" was founded on two considerations: First, the building of the railroad, which is a valid consideration; and, second, the location and maintenance of the machine shops, which is void as a consideration. That when a corporation, in doing an act which it is

authorized to do, goes beyond its powers, the excess not being intrinsically illegal, the act will be held good so far as authorized, and defeated as to the excess, if that be separable.

We are aware that there is a line of modern cases holding, that, when a corporation performs an act which it has the power to do, but performs it merely in excess of its authority, when the excess can be separated from the other portion of the act, it will be maintained as far as it has authority; and when a corporation performs two acts in connection, one of which is authorized and the other not, and they can be separated, the authorized act shall be maintained, and the other disregarded; but when a corporation performs two acts, one of which is authorized and the other not, and the acts are so blended as to be inseparable, neither will be sustained. And this is good law.

But the case before us belongs to neither of the above classes. In this case, the first step was unauthorized by law, namely, the petition to grant the donation. The statute—which grants rights and powers unknown to the common law, and therefore must be construed strictly, —authorized the city of Attica, upon petition of a majority of its resident freeholders, to subscribe to the stock of any railroad, etc., running, etc., or to make, on such petition, donations, in money or bonds of the city, to aid in the construction of any such railroad, subject, etc.   With the first clause of the statute cited, we are not concerned in the present case.   The petition was not to subscribe stock to a railroad.   If it can be maintained at all, it must be maintained as a petition to donate the bonds of the city of Attica, " to aid in the construction of " a certain railroad.   But the petition is, " to cause to be issued and donated by the city of Attica to the Indiana North and South Railway Company, * * sixty thousand (60,000) dollars," etc., " in bonds," etc.   " The donation to be made upon the consideration that said railway company shall perma-

nently locate and maintain their shops for the manufacture of their rolling stock, in or adjacent to the city of Attica, and, on failure so to do, said company is to reimburse said city in the sum of sixty thousand (60,000) dollars." This is not a petition simply to donate bonds to the railroad, as contemplated by the statute, but a petition to contract with the railroad, upon the consideration that, if the company will so locate and maintain its shops, or, on failure to do so, reimburse the city, it will donate to the company sixty thousand dollars in bonds. The words of the petition can have no other plain and fair meaning. It is, therefore, not a petition authorized by the statute. If the petition, and the ordinance of the city of Attica in pursuance of it, agreed to by the railway company, do not constitute a contract, we are at a loss to know what would. They make an agreement, upon a consideration, to do particular acts, and if such a contract can be upheld under the statute, the city of Attica, upon petition of a majority of her resident freehold citizens, could go into the marts of the world and make any contract, provided it was to aid in the construction of a railroad running in the vicinity. We would not know where to draw the line of distinction between this contract and any other for the same purpose.

But it is said that the petition is more favorable to the city of Attica than a petition for a simple donation would be. We do not perceive any force in this argument. The statute authorized the resident freeholders to petition for certain things to be done; the city of Attica upon said petition was authorized to do certain acts; this will not authorize the residents of the city to petition for certain other things to be done, nor the city to do other certain acts, merely because they are more advantageous than those which are authorized. The resident freeholders of the city of Attica have no power under the statute to petition for what they choose, nor the city to make contracts with railroads as it chooses, merely because they are

advantageous, and thus require the tax-payers to answer to their obligations. They can perform only the acts authorized by the statute. The fact that the petition was for certain advantages unauthorized by the statute is specious, and well calculated to induce the resident free-holders to sign it, when they would not, if it were otherwise, have done so. It is impossible to know how many were induced to sign the petition to obtain the supposed benefit from the railroad, how many to obtain the advantage from the machine shops, or how many upon the faith of the conditional reimbursement. It may be that none would have signed it, if it had been for a donation uncoupled with supposed advantages expressed upon its face. These facts vitiate the petition. It is not one authorized by the statute, and, therefore, did not authorize the ordinance passed in pursuance of it, nor the issue of the bonds.

And the doctrine, that when corporations exceed their authority they may be upheld as to all except the excess, when it is separable from that which is authorized, can have no application in this case. The petition to donate the bonds is so mixed and blended with the consideration or condition upon which they were to be donated, that the parts can not be separated. It is impossible to say what portion of the bonds should be upheld on the grounds of the supposed benefit derived from the railroad, what portion for the advantages of the machine shops, or what portion upon the faith of the reimbursement; all must therefore fall together. We can not uphold all the bonds for only a part of the consideration, or the performance of only a part of the condition upon which they were issued.

We are thus conducted to the conclusion that the statute did not authorize the petition, that the petition did not authorize the ordinance, and that the ordinance did not authorize the issue of the bonds.

The petition for a rehearing is overruled.