No. 8933.

## THE CITY OF MADISON ET AL. *v.* SMITH ET AL.

CITIES.—*Bonds.*—*Injunction by Taxpayer.*—A citizen and taxpayer of a city may by injunction prevent an illegal appropriation of the funds of the city, or the creation of a debt which the authorities have no authority to incur, or the issue of negotiable bonds which *bona fide* holders might enforce, and where they have been issued, but remain in the hands of one who received them with notice, may maintain a suit to restrain their transfer and to cancel them.

SAME.—*Aid to Railroads.*—*Statute Construed.*—Section 3153, R. S. 1881, was in 1877, and still is, in force, and by its provisions a petition by a majority of the freeholders of a city is necessary to confer upon the common council power as well to subscribe for the stock of a railroad company as to make a donation to aid it. Section 3152 is and was also in force, and is not inconsistent with section 3153.

STATUTE.—*Repeal by Implication.*—Repeals by implications are not favored, and where two statutes may well stand together it is the duty of the court to construe them *in pari materia.*

SAME.—*Petition for Subscription for Stock.*—Where the city council, upon petition, refuses to subscribe for the stock of a railroad company, under section 3153, it has no power, after the lapse of two years, to again consider the same petition and grant its prayer.

SAME.—*Decision of Council.*—Where a city council has authority to decide upon the sufficiency of such a petition, and its decision is final, it is so whether for or against the petition.

SAME.—The decision of the city council, that such petition has or has not the requisite number of signatures, is not conclusive, but the question is open to enquiry, either upon mandamus to compel, or injunction to prevent, action by the council.

SAME.—*Appeal.*—The rule is different where there is a right of appeal or the tribunal is strictly a judicial one.

STATUTE.—*Mandatory.*—Where a statute directs the performance of an act which is for the benefit of a citizen or the public, it is to be construed as mandatory and not directory.

INJUNCTION.—*Right to, where Bonds are Negotiated.*—Where municipal bonds are negotiated and in the hands of an innocent holder, the taxpayers are not entitled to an injunction; but it is otherwise where they are in the hands of the original parties.

MANDAMUS.—*Discretionary Powers.*—Where a municipal corporation has a discretionary power, mandate will not lie; but where the duty is an imperative one, it is otherwise.

PETITION FOR RAILROAD AID.—The common council must decide upon petitions to aid railroads before bonds can rightfully be issued.

SAME.—*Interest of Councilman.*—Where the action of the common council, in voting aid to a railroad company, depends upon discretion, councilmen who are stockholders in the railroad company are not competent to act, and a grant of aid carried by their votes will not be valid.

SAME.—*Acquiescence of Railroad Company.*—Where a railroad corporation silently acquiesces for two years in a decision of a city council adverse to a petition, it can not afterwards revive the original petition and secure a favorable decision.

SAME.—*Estoppel.*—The records of a city council, denying a petition for aid to a railroad, must be presumed to have come to the knowledge of the railroad company, and it can not successfully aver, by way of *estoppel* to a suit by a taxpayer to cancel bonds afterwards, without authority, issued as such aid, that it had, on faith in their validity, issued stock to the city and entered into contracts for the construction of its road.

From the Jefferson Circuit Court.

*J. R. Cravens, E. R. Wilson, H. W. Harrington* and *A. G. Howe,* for appellants.

*C. E. Walker* and *C. A. Korbly,* for appellees.

ELLIOTT, J.—Appellees are citizens and taxpayers of the city of Madison, and instituted this action to enjoin the negotiation of bonds issued by the city authorities to the Bed-

ford, Brownstown and Madison Railroad Company, and to secure the cancellation of a subscription made by the corporate authorities to the stock of the railroad company.

The material allegations of the complaint are these : That the appellees are resident voters and taxpayers of the city of Madison, and are owners of property in that city subject to taxation ; that the city is incorporated under the general laws of the State for the incorporation of cities ; that Joseph A. Stillwell and other persons filed articles of association to incorporate a railroad company, called the Bedford, Brownstown and Madison Railroad Company, in 1876, and subscribed a small amount of capital stock ; that shortly afterward its promoters solicited votes and aid from the townships through which it was to pass, and obtained votes of aid from Madison, Hanover and Republican townships, in Jefferson county, but that the tax voted in Madison township was perpetually enjoined in March, 1878, and that the tax in the other two townships is void, and was suspended by the treasurer and auditor of county, and has been abandoned ; that in the autumn of 1877 the railroad company caused a little work to be done in grading, to the amount of about $5,000, for the greater part of which it failed to pay, and is unable to pay ; that all of its solvent stock has been expended, and that the company is insolvent ; that since November, 1877, no work whatever has been done, and the project of attempting to build said railroad seemed to have been abandoned, and the little work that was done had been allowed to wash away ; that John R. Cravens and the other persons named were the president and directors of said railroad company, and they and each of them in their individual and corporate capacity had full and complete notice of the facts, defects, irregularities and nullities in the complaint alleged to exist in the corporate proceedings.

That on the 20th day of September, 1877, the parties interested in the construction of the proposed railroad submitted to the common council of the city a petition requesting that body to subscribe $50,000 to the capital stock of the com-

pany; that, at the time the petition was presented, it was signed by one hundred and fourteen married women and by sixty infants; that the names of one hundred freeholders were signed by other persons whom they had verbally authorized to affix their signatures; that afterwards two hundred other signers withdrew their names, and that, when the council acted upon the petition, it did not contain the names of a majority of the freeholders of the municipality; that the petition was referred to a committee; that this committee reported, among other things, that the petition contained the names of a majority of the freeholders of the city; that on the 15th day of November the council refused to grant the prayer of the petition, and duly entered this order of record; that two years afterwards the common council passed an ordinance, by the casting vote of the mayor, providing for the subscription of $50,000 to the capital stock of the railroad company, and for issuing to the company bonds of the city in payment of the subscription; that the ordinance was passed pursuant to a secret agreement between the company and six members of the council; that the agreement is as follows:

"We, the undersigned, as councilmen, agree to obligate ourselves to vote for an appropriation of $50,000 in aid of the B., B. & M. R. R. Co. Said $50,000 to be placed in the hands of J. R. Cravens, as a taxpayer and citizen, to be held by him until such time as the directors get private or municipal subscriptions to the amount of $50,000. If they (the directors) do not get the subscriptions, the money to be returned to the city."

That said John Jager was then and there also a stockholder in and director of said railroad company, to whom the bonds were issued, and with whom said contract of subscription was made; and said Jager, as such stockholder and director of the railroad company, was, at the time of said vote in said council, and is interested in the contract of subscription and in said debt of said city to said railroad company created by said bonds; of all of which said railroad company had notice

at and before the making of said subscription and issuing of said bonds; that it had full and complete notice of the form and substance of said petition; that it procured it to be circulated, and solicited the signatures thereto, and had full notice of the incompetency of the signers thereto; that it did not contain a majority of the resident freeholders of said city signed thereto in a lawful manner; had full notice that the said petition was acted on November 15th, 1877; that it was not again presented to said council, or in any manner taken up; and that said bonds were illegal and void; that said railroad company has the custody of said bonds by its officers, and the said bonds have not been sold to innocent purchasers; that the common council is about to exchange the bonds issued on the 15th of November for bonds of a different denomination, negotiable in the city of New York.

The grounds upon which relief is asked are thus stated in the complaint:

"1st. Because said petition of September 20th, 1877, was not signed by a majority of resident freeholders of the city of Madison, and the city council, by its vote thereon, on November 15th, 1877, in legal effect so found.

"2d. Because the common council of said city, at its said session of November 15th, 1877, refused to grant the prayer of said petition, and rejected the same by a regular majority vote; and the said petition became, and from thenceforward was, dead and of no effect.

"3d. Because said petition was and is void on its face, for the reason that it does not appear from said petition that the said railroad named therein was and is a railroad running into, through or near to the corporate limits of said city of Madison.

"4th. Because said city council did not at any time find that said railroad is or was a railroad running into, through or near to the corporate limits of said city.

"5th. Because said city council, in its ordinance of Novem-

ber 6th, 1879, recite that said petition had been refused on the 15th day of November, 1877.

"6th. Because no petition whatever was presented to, read by, or examined by the said city council at any time after the 15th day of November, 1877, and the city council of November 6th, 1879, was a new council, composed of new and different members from those composing the council of November 15th, 1877.

"7th. Because the said John Jager, who was, as aforesaid, a member of said city council on November 6th, 1879, and who voted for said ordinance, subscription and issue of bonds, and without whose vote the same could not have been passed, made and issued, was, at the same time, a stockholder and director in said railroad company, and thereby interested in said contract of stock subscription and in said bonds."

All of the defendants below except the city of Madison united in an answer of two paragraphs, the first of which is, in substance, as follows: That the Bedford, Brownstown and Madison Railroad Company is duly incorporated, and that its line of road runs into the limits of the city of Madison; that on the 20th day of September, 1877, a majority of the resident freeholders of the city presented to the common council the following petition:

"*To the Mayor and Common Council of the City of Madison, Indiana:*

"We, the undersigned, resident freeholders of the city of Madison, Indiana, respectfully petition your honorable body to subscribe for said city of Madison fifty thousand dollars to the capital stock of the Bedford, Brownstown and Madison Railroad Company, to aid in the construction of said railroad."

That the petition remained unchanged upon the files of said council until the action of the council granting the prayer thereof, on the 6th of November, 1879; that on the 15th of November, 1877, Wm. T. Friedley, a member of said council, moved to take up and grant the prayer of said petition, which was decided in the negative; that, after the vote had

been taken, no remonstrance was filed; that on said 6th day of November, 1879, said council did find, determine and resolve, that said signers were a majority of the resident freeholders of said city; that said railroad was a railroad duly incorporated and established in the State of Indiana, commencing at Bedford, in Lawrence county, and extending thence to and within the corporate limits of the city of Madison, in Jefferson county; and did then and there find, determine and resolve, that all matters necessary to authorize the subscription of said stock was established before them, and did, by a majority vote, pass the ordinance subscribing fifty thousand dollars, and that said railroad company issued and delivered to said city a certificate for one thousand shares of its capital stock, of fifty dollars per share; that said city still holds and claims to own said stock, having given for the same ten six per cent. twenty-year bonds, of $5,000 each, and that said city has ratified the same; that said city council was not guilty of any connivance; that the work of constructing said railroad has not been abandoned by the company; that a large amount of its stock can be collected; that said company has no knowledge of any combination or agreement as alleged in the complaint.

It is also stated in the answer that on the 5th day of February, 1880, at a regular meeting of the common council, the following proceedings were had:

"Mr. Kirk offered the following, to wit: ' Ordered, to correct the minutes of November 15th, 1877, by striking out the following words: "On motion of Mr. Friedley, which words are as follows: First. To grant the prayer of the petition. Second. The words granting the prayer of the petition;" also, striking out the following words: "and against the prayer of said petition," so that the same, when so corrected, would read according to the facts, and as follows, to wit: "On motion of Mr. Friedley, that the petition in favor of subscription of $50,000 to the capital stock of the B., B. & M. R. R. Co. be

taken up and the prayer of the petitioners be granted.' *
* * Motion made and lost by 3 to 9."

The second paragraph of the answer is very similar to the
first. After stating the matters concerning the signing and
presentation of the petition and the proceedings of the coun-
cil thereon, and after averring the due organization and loca-
tion of the road, it "alleges, that said railroad company, in
good faith, contracted with divers persons to construct said
road, and were proceeding with the work when enjoined in
this action, and in good faith believed said bonds were valid,
and that the individual defendants in this action have no in-
terest therein except as other stockholders; that Joseph T.
Brashear and John Jager were members of said council and
stockholders and directors in said railroad company, and that
said common council knew this fact; that said bonds of said
city, through its mayor and clerk, in pursuance to an ordi-
nance, were sold and delivered to said railroad company, and
that the stock issued and delivered to the said city has never
been tendered back, and that said Jager and Brashear acted
as members of the common council, and not as directors of
said road; that the board of directors of said railroad com-
pany was not in session at the time of passing said ordinance,
all of which said council knew."

The appellees replied to the answer, and the appellants de-
murred. The demurrer was carried back and sustained to the
answer, so that the question is as to the sufficiency of that
pleading.

The appellees, as citizens and taxpayers of the city of Mad-
ison, had a right to institute an action to enjoin the illegal ap-
propriation of the funds of the municipality, and to prevent
an illegal burdening of the corporation by a debt which the
common council had no authority to incur. Where munici-
pal authorities are undertaking to issue negotiable securities
which, if bought by *bona fide* purchasers, would be valid and
enforceable, injunction will lie at the suit of a taxpayer to
prevent their issue.

We think the statutes now in force, and which were in force when the acts described in the complaint and answer were performed, required a petition in cases where stock is subscribed, as well as in cases where donations are made in aid of railroad companies. R. S. 1881, sec. 3153.

In the 60th section of the act for the incorporation of cities, as it stood prior to 1869, a petition was not necessary to authorize municipal corporations to subscribe for stock in railroad corporations, but was necessary in order to empower the council to make donations. This was so ruled in *Thompson* v. *City of Peru,* 29 Ind. 305.

In May, 1869, an act was passed entitled "An act to enable cities to aid in the construction of railroads, hydraulic companies, and water powers, and declaring an emergency." This act expressly requires a petition, and contains the following clause : " Subject, however, to the limitations, direction and restriction named in the provisos to the sixtieth section of the act entitled 'An act to repeal all general laws now in force for the incorporation of cities, prescribing their powers and rights, and the manner in which they shall exercise the same, and to regulate such other matters as properly pertain thereto.' " In March, 1873, an act professing to amend section 60 of the act in relation to cities was passed, but containing no reference to the act of May, 1869. This amendatory act, that of 1873, does not assume to change section 60, except to add to the number of enterprises which cities may aid by subscribing stock or making donations. If the act of 1869 repealed the 60th section as it stood prior to the amendment of 1873, then the latter act is void, because a section of a statute which has been repealed can not be amended. *Brocaw* v. *Board, etc.,* 73 Ind. 543. If void for this reason, then, of course the statute of 1869 was in full force. If not void, it must be so for the reason that the original section 60 is not in conflict with the act of 1869, and, if this be so, it follows that both the amended section 60 and the act of 1869 are in force. Whatever view

may be taken, it results in establishing the validity of the act of 1869.

We think both the amended section 60 and the act of May, 1869, are in force. They may well stand together, the one as designating the enterprises which cities may aid, the other as prescribing the prerequisites to giving that aid. Repeals by implication are not favored, and it is only where there is full and plain conflict that the earlier statute will be held to be repealed. Where it can be reasonably done, both will be upheld and construed *in pari materia.*

The act of 1869 has been recognized as the governing act by many decisions of this court. It may be true that the question has not been directly presented, but it is nevertheless true that the question is necessarily bound up and decided in these cases. *Indiana, etc., R. W. Co.* v. *City of Attica,* 56 Ind. 476; *Wilkinson* v. *City of Peru,* 61 Ind. 1; *Mayor, etc.,* v. *State, ex rel.,* 57 Ind. 152.

If it were granted that the appellants are correct in asserting that no petition is necessary, their defeat would be inevitable. In that event, they would stand in the attitude of having procured the order upon which they rely by the votes of two of the members of the corporation directly and chiefly interested—Mayor Brashear and councilman Jager. Municipal officers can not by their votes give aid to a private corporation in which they have a direct pecuniary interest, by an appropriation of the funds of the municipality. If no petition was necessary, then Brashear and Jager were not mere passive instruments, but active and controlling agents in adopting the ordinance creating the debt. But we deem it unnecessary to pursue the investigation of this point further, and pass to other questions.

The action taken by the common council on the 15th of November, 1877, was a decision against the petition. The vote upon the motion to grant its prayer was a rejection. Where a petition is presented for action, and the action taken upon it results in a denial of its prayer, the decision is ad-

verse to the petition. It does not require any subsequent action to finally close the matter; the denial does that.

The action of the council refusing the prayer of the petition remained undisturbed until November 6th, 1879. In the ordinance adopted on that day, and upon which rests the appellants' claim to the bonds, it is stated that the common council rejected the petition in November, 1877, and this makes clear the situation of affairs at the time the ordinance was adopted. The council having once decided adversely to this petition, that body had no right to reverse that decision after the lapse of so great a period of time as that between November, 1877, and November, 1879. In *Board of Commissioners, etc.,* v. *State, ex rel.,* 61 Ind. 75, it was held that the board of commissioners had no authority to set aside an order locating the county seat. In *Doctor* v. *Hartman,* 74 Ind. 221, the holding was, that the commissioners could not set aside an order accepting the report of viewers and dismissing the petition. In *City of Indianapolis* v. *Patterson,* 33 Ind. 157, the court was equally divided upon the question of the authority of the council to set aside an order approving an estimate for a street improvement. It has often been held that a justice of the peace has no power to change or vacate his judgments except in the manner expressly provided by statute. *Foist* v. *Coppin,* 35 Ind. 471; *Smith* v. *Chandler,* 13 Ind. 513; *Roberts* v. *Warren,* 3 Wis. 736. In *City of Covington* v. *Ludlow,* 1 Met. Ky. 295, it was held that a common council can not vacate a decision made at a prior date, and that a subsequently elected council can not amend a record made by their predecessors. In discussing the general question before us, Mr. Jones, in his work on railroad securities, says: " The power conferred upon the township to vote such aid is exhausted when once acted upon, unless authority be given it by statute to act again." Jones R. R. Securities, section 268. We are satisfied that the rule is the same whether the decision is in favor of or adverse to the petition, and counsel for the appellant cite a great number of cases showing that when made in favor

of the petition it is final. Among the authorities cited by them, and which do sustain their contention that the decision of a jurisdictional question by an inferior tribunal is conclusive as against a collateral attack, are Potter's Dwar. Stat. 299; *Evansville, etc., R. R. Co.* v. *City of Evansville*, 15 Ind. 395; *Board, etc.*, v. *Markle*, 46 Ind. 96; *State, ex rel.*, v. *Needham*, 32 Ind. 325; *Hord* v. *Elliott*, 33 Ind. 220; *Mayor, etc.*, v. *State, ex rel.*, 57 Ind. 152; *Bissell* v. *City of Jeffersonville*, 24 How. 299; *Board, etc.*, v. *Aspinwall*, 21 How. 539; *Town of Coloma* v. *Eaves*, 92 U. S. 484; *Commissioners, etc.*, v. *Bolles*, 94 U. S. 104. To these cases may be added, as maintaining this general doctrine, the cases of *Goddard* v. *Stockman*, 74 Ind. 400; *Muncey* v. *Joest*, 74 Ind. 409; *Board, etc.*, v. *Hall*, 70 Ind. 469. If we accept the appellants' theory, and hold it applicable to the facts of this case, it brings defeat to them, for it can not be justly said that a decision is final only when made in favor of the petition. It must be final, if final at all, no matter whether for or against the petition.

It is maintained that the duty of the common council to issue the bonds became absolute on the filing of the petition, and that therefore their action on the 15th of November, 1877, was without force and could not impair the right of the railroad company to the bonds. It is no doubt true that where the statute directs the performance of an act in which others have a beneficial interest, the direction will be deemed mandatory. It has often been decided that where powers are conferred on public officers, and the exercise of such powers beneficially interests third persons, the courts will compel the officers to exercise them. Sedgwick Stat. Const. 317; Dill. Mun. Corp., sections 62, 669, 689. This rule was applied to a case very similar to the present in *Mayor, etc.*, v. *State, ex rel., supra*, where it was said: "Till such a petition was presented, the common council had no power to issue such bonds; and, when such petition was presented, the council had no right to refuse to issue them on the completion of the road to the desig-

nated point; a fact, also, to be ascertained by the council." In another place in the opinion the duty of the council is said. to be an absolute one, and it was held that mandamus would. lie to enforce its performance.    If this be the law, then the council have no discretion to refuse to grant a petition, what-- ever may be the individual judgment of the members.    Suppose they do refuse on the ground that there is not a majority of signers in a case where the evidence without conflict con-- clusively shows that the petition is signed in strict and full compliance with the law, can their decision be regarded as a, conclusive adjudication, and the railroad company without remedy?    There is no appeal, and, therefore, there must be recourse to some extraordinary remedy, or no redress at all. On the other hand, suppose, for the sake of illustration, that. we take the extreme case of there being less than one-tenth of the requisite number of signers, are the taxpayers concluded by the decision of the council that there is a majority? If not, is there not some remedy?    If a remedy, it must be some other than appeal, for the statute makes no provision for appeals in such cases.    Where the corporation in whose favor the tax is levied or bonds issued has done work on the faith of the validity of the council's decision, or where there is a right of appeal, or where the rights of third persons have. intervened, it may well be that the decision should be deemed conclusive and no resort to an extraordinary remedy, such as. mandate or injunction, permitted.    But where there is no right of appeal, where there is no change in the situation of the parties, where no innocent parties can suffer, and no grounds for estoppel *in pais* exist, we think there may be a, resort to some appropriate remedy.    The case of *Mayor, etc.,* v. *State, ex rel., supra,* decides, as we have seen, that mandamus. will lie at the suit of the railroad corporation, and we think it. clear that if the one party is entitled to a remedy, so also is the other.    It has been many times decided, in cases closely analogous to this, that where there is no right of appeal injunction will lie.

The parties here are the original ones.    There has been no intervention of the rights of third persons, there is no element of an estoppel *in pais*, nor is there any right of appeal.    We are of the opinion that, as on the one hand the railroad is entitled to mandamus, so on the other the taxpayer is entitled to injunction.

The case before us would be different if there was a right of appeal, or if there were any element of estoppel, or if the rights of third persons had intervened.    It will be found upon examination, that the rule protecting the decision of an inferior tribunal upon a jurisdictional question does not apply to a case like the one under consideration.    The Supreme Court of the United States has carried the doctrine as far as any other court, and yet we find it saying:    "We have never however, held, that such defect or irregularity could not be set up by the maker of the bonds where the suit upon them was brought by one * who had notice of the defect or irregularity."    *Chambers County* v. *Clews,* 21 Wal. 317.

Judge Dillon says:    "When the legislation is of this character,—namely, requiring compliance with some such condition before issuing the bonds,—the Supreme Court of the United States does not hold, as we understand their decisions, that the power can be rightfully exercised unless the condition precedent has been performed.    As between the immediate parties, the municipality and the railroad company, doubtless, the enquiry is open, and fully open, whether the condition on which the rightful exercise of the power depends has been complied with ; and if it has not been, on due application, the issue of the bonds will be enjoined, or if they are in the hands of the original party or of holders with notice, an action to enforce the bonds may, if no estoppel exists, be successfully defended."    1 Dill. Munic. Corp. (3d ed.), section 519.

The cases which recognize the right of the common council, in such a case as this, to exercise a power in its nature judicial, do not hold that body to be a court.    On the contrary, the power exercised in making such a decision is not treated as a.

strictly judicial one, but as one of a judicial nature. The cases applying to the decisions of courts of inferior jurisdiction, where the power to decide is judicial, can not have the same force where the decision invokes the exercise of only a *quasi* judicial power. Certainly they can not be allowed to have the effect of making such a decision conclusive, when, upon the real facts being shown, it would appear that there was no authority for the action of the council.

The decision of the common council on the matters brought before them by the petition is, notwithstanding the fact that they may be compelled to make one, and, in this class of cases, to make it in a certain way, a prerequisite to the company's right to the bonds. It is no doubt the general rule that an inferior tribunal will only be compelled to act—not to make a decision one way or the other; but where a body not strictly judicial, although possessing *quasi* judicial powers, is under an absolute duty to act, and to act only in a certain way, the performance of that duty, both as to the action and its character, will be coerced by mandate. 2 Dill. Munic. Corp., section 857; Burroughs Public Securities, 534. This must be true in such a case as the present, or the council, by arbitrarily rejecting the petition, could deprive the railroad corporation of its rights, and leave it remediless. Where there is a discretion, courts will not compel its exercise in any given direction; but where, upon the facts, the duty is a plain and absolute one, it is otherwise.

The railroad company is not entitled to the bonds claimed because, as we have seen, the only valid decision upon the matter which precedes the right to compel the city to issue them is adverse to it. We do not think the railroad corporation can claim the bonds, while the decision of the common council denying the sufficiency of the petition stands unchanged. We are not now treating that decision as conclusive, but as one to be respected until set aside in some legal manner. If we should treat it as conclusive, then, as we have already shown, the claim of the appellant is entirely without

foundation. The statute certainly does require that the common council shall first pass upon the petition, and it follows that their decision is to be given some force; if not, then the statute has commanded the doing of a vain and idle thing. A late writer in discussing this subject says: "Formalities imposed by the Legislature upon municipal corporations as conditions precedent to the exercise of a power of borrowing which rests wholly upon the legislative authority are regarded as imperative as between the immediate parties." Jones R. R. Securities, section 268. The authorities upon the subject we are discussing have been carefully reviewed by Mr. Burroughs, and he thus states his conclusion: "The doctrine is well established that when the officers charged with the duty of issuing municipal bonds have issued bonds without the performance of the conditions precedent required by the statute, or are about to issue them, the taxpayers have a right to restrain the officers from issuing the bonds, or if issued, to restrain their negotiation, and have them delivered up to be cancelled; and they are entitled to the same remedy where there is a want of power to issue the bonds. It is not considered that this doctrine is at all in conflict with the general rule that subordinate tribunals will not be interfered with when in the performance of the duties imposed upon them, or that the discretion of public officers will not be controlled by the courts. Where there is a want of power, or where the officers are acting without a compliance with the precedent conditions imposed, they exceed their powers, and act without authority; and unless there was some preventive remedy in such cases, the taxpayers would often have to bear burdens imposed without authority of law." Burroughs Public Securities, 297. We think the reason upon which the rule stated in this quotation rests applies to this case. The decision of the common council upon the question whether the petition is signed by the proper number of taxpayers, and whether the railroad is of the character and class provided for by the statute, is something more than a formality; it is a matter of

substance; and if formalities must be complied with, much stronger is the reason for holding that provisions regarding matters of substance must be obeyed. The railroad corporation, not having obtained a favorable and valid decision of the common council upon the matters presented for their consideration by the petition of the taxpayers, is not in a situation to claim the bonds in dispute. *Phillips* v. *Town of Albany*, 28 Wis. 340; *Virginia, etc., R. R. Co.* v. *County Comm'rs, etc.,* 6 Nev. 68; *People, ex rel.,* v. *Suffern,* 68 N. Y. 321; *Indiana, etc., R. W. Co.* v. *City of Attica,* 56 Ind. 476; *Greensburgh, etc., T. P. Co.* v. *Sidener,* 40 Ind. 424.

We have already seen that the common council had no right to change its original decision upon the petition of the taxpayers, and, as that last decision is invalid, no rights can flow from it. The railroad corporation may have had the right to compel the council to make the subscription when the petition was presented, for it is averred in the answer that the petition contained the requisite number of signatures, and that the railroad company was within the provisions of the statute, but the claim to the bonds is not placed upon that ground by the answer; on the contrary, the answer proceeds upon the theory that the ordinance adopted in November, 1879, entitled the company to the bonds because its adoption was a decision in favor of the sufficiency of the petition. If the ordinance can not be sustained, and that it can not has already been shown, the foundation falls away from the answer.

If, however, we were at liberty to construe the answers as asserting a right upon the original matter as presented to the council by the petition in November, 1877, we should be compelled to reach a conclusion adverse to the appellants. The decision in 1877 was against the petition and necessarily the railroad company, and for two years this decision was acquiesced in, and this, we think, must be deemed an abandonment of such rights as the petition conferred. Where a party silently acquiesces in a decision of a public body for such a length of time as two years, and no excuse is shown, he must

be taken to have assented to it. If a railroad corporation may suffer the matter to sleep quietly for two years, it may do so for a much greater length of time, and then, perhaps, assert a right after the situation of affairs has been entirely changed. It may be that, within the period intervening between the decision upon the petition and the demand for the bonds, other railways have been built, or other debts and burdens have been assumed by the municipality, thus making a radical change in municipal affairs. The safe rule is to require a corporation, insisting upon rights growing out of the decision of a public body, to act promptly, or at least with fair and reasonable diligence. Where the common council decide against the petition, and the railroad company suffers the decision to pass unchallenged for a great length of time, the dissenting taxpayers may fairly assume that the matter is at an end, and relax their vigilance; and to permit the railroad company to come in and revive the matter without a new petition, after the lapse of such a period as two years, would be unjust to the taxpayers opposed to the subsidy.

We have assumed in the preceding discussion that there are no elements of an estoppel *in pais* shown in the answers, and we shall now briefly state the grounds of this assumption. The records of a municipal corporation are public records, and supply notice to all persons interested in the action of the municipal authorities. *Johnson* v. *Common Council, etc.,* 16 Ind. 227; *Newman* v. *Sylvester,* 42 Ind. 106. The railroad company had, therefore, constructive notice of the action of the common council rejecting the petition, and could not rightfully assume that this decision would not be adhered to. At all events, the company had notice that the governing body of the city resisted its right to the bonds, and if with this knowledge it went on with the work of constructing its road, it did so without having any right to expect aid from the city. There was nothing done to induce the belief that the bonds would be issued; on the contrary, action was taken clearly indicating that the bonds would not be issued. The company can not, therefore, justly

say that it did work on the faith that it would receive aid from the municipality. Whether the decision denying the petition was right or wrong, it was notice to the railroad company that no aid was to be expected from it.

We find no error warranting a reversal, and, therefore, affirm the judgment.